UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMIE C. SHALLAL,

      Petitioner,

                                      CASE NO. 2:07-CV-12994
v.                                     JUDGE ANNA DIGGS TAYLOR
                                      MAGISTRATE JUDGE PAUL J. KOMIVES

CLARICE STOVALL,

      Respondent.
_____/

## REPORT AND RECOMMENDATION

I.     RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus.

II.    REPORT:

A.    *Procedural History*

      1.     Petitioner Jamie C. Shallal is a state prisoner, currently confined at the Robert Scott Correctional Facility in Plymouth, Michigan.

      2.     On September 21, 2004, petitioner was convicted of first degree home invasion, MICH. COMP. LAWS § 750.110a(2); second degree home invasion, MICH. COMP. LAWS § 750.110a(3); and receiving or concealing stolen property less than $200, MICH. COMP. LAWS § 750.535(5), following a jury trial in the Oakland County Circuit Court. On October 19, 2004, she was sentenced to a term of 4½-20 years' imprisonment on the first degree home invasion conviction, a concurrent term of 3¾-15 years' imprisonment on the second degree home invasion conviction, and to time already served on the receiving stolen property conviction.

      3.     Petitioner appealed as of right to the Michigan Court of Appeals raising, through

counsel, the following claims:

> I. DOES THE TRIAL COURT'S DENIAL OF APPELLANT'S REQUEST TO INSTRUCT HER JURY ON THE LESSER-INCLUDED OFFENSE OF ILLEGAL ENTRY CONSTITUTE REVERSIBLE ERROR?
>
> II. DOES THE FAILURE TO INSTRUCT APPELLANT'S JURY THAT AIDERS AND ABETTORS MUST HAVE THE NECESSARY SPECIFIC INTENT TO BE GUILTY OF A SPECIFIC INTENT CRIME CONSTITUTE REVERSIBLE ERROR AS IT DENIED HER A FAIR TRIAL?

The court of appeals found no merit to petitioner's claims, and affirmed her conviction and sentence. *See People v. Shallal*, No. 259300, 2006 WL 794884 (Mich. Ct. App. Mar. 28, 2006) (per curiam).

    4.    Petitioner sought leave to appeal these issues to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Shallal*, 476 Mich. 867, 720 N.W.2d 318 (2006).

    5.    Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on July 18, 2007. As grounds for the writ of habeas corpus, she raises the two claims that she raised in the state courts.

    6.    Respondent filed his answer on January 28, 2008. She contends that petitioner's claims are without merit or not cognizable on habeas review. Respondent also argues that petitioner's claims are barred by the concurrent sentence doctrine, and that petitioner's second claim is barred by petitioner's procedural default in the state courts.

B.    *Factual Background Underlying Petitioner's Conviction*

The factual background underlying petitioner's conviction was accurately summarized in the prosecutor's brief in the Michigan Court of Appeals:

> During trial, Gary Hutchinson testified that he lived at 5274 Iroquois in Clarkston, Michigan. (Tr I, 86). Hutchinson left his home around 9:45 a.m. and returned around 12:30 p.m. (Tr I, 86-87). When Hutchinson returned home, he discovered that the front door of his house had been forced open and the kitchen had

been ransacked. (Tr I, 86-88). The only items missing from the house were a ring, tennis bracelet, box of crackers and a bottle of Coke. (Tr I, 88). After the items were stolen, Oakland County Sheriffs Department personnel showed Hutchinson a photograph of the tennis bracelet and ring. (Tr I, 89). The bracelet was valued at $199 and the ring was valued at $60. (Tr I, 90).

Dallisa Williams testified that she previously worked for Marie Maggard at 6335 Oakhill in Ortonville, Michigan. (Tr II, 119-120). Maggard suffered from dementia. (Tr II, 120). On June 18, 2004, at approximately 1:30 p.m., an alarm went off at Maggard's house and Williams saw a man knocking on the front door. (Tr II, 122). Williams did not know the man so she did not open the door. (Tr II, 122). Instead, Williams called Maggard's daughter. (Tr II, 122). Thereafter, Williams looked out the upstairs window and saw Defendant in the driver's seat of a Blazer drinking a soda. (Tr II, 122, 127). The man knocking on the door went back to the car, said something to Defendant, and let another man out of the back seat of the car. (Tr II, 122, 124).

Williams testified that the man who had been banging on the front door returned with the other man from the vehicle and they both started banging really hard on the front door. (Tr II, 122). Williams ran downstairs with a hammer. (Tr II, 122). Williams raised the hammer as the men came into the house. (Tr II, 122). The men fled and Williams called 911. (Tr II, 123). Maggard's daughter arrived and Williams told her to follow the suspect vehicle. (Tr II, 123). Shortly thereafter, Williams identified the three individuals involved in the breaking and entering. (Tr II, 124).

Oakland County Sheriff Deputy Craig Stout testified that he was on patrol in Independence Township on June i 8, 2004, when he received a dispatch of a home invasion at 6335 Oakhill Road. (Tr I, 93). Stout was given a description of the vehicle involved in the home invasion, specifically, a dark colored GMC Jimmy-type vehicle. (Tr I, 93). Stout was also told that three persons were inside the vehicle, one white female and two white males. (Tr I, 94). A vehicle matching the description of the vehicle from the dispatch was stopped a half-mile north of 1-75, on M-15. (Tr I, 94-95). Defendant was one of the occupants of the stopped vehicle. (Tr I, 95). Dallisa Williams was brought to the scene and identified Defendant. (Tr I, 96-97). Stout went to 6335 Oakhill and discovered that the striker plate on the front door had been ripped from the woodwork. (Tr I, 97).

Oakland County Sheriff's Detective Scott Patterson interviewed Defendant. (Tr I, 101). Patterson identified Defendant and her two accomplices, Anthony Owens and Eugene Lince. (Tr I, 104). Owens and Lince both declined to be interviewed. (Tr I, 105). The police discovered stolen property in the vehicle when Defendant was arrested. (Tr I, 107). Defendant told Patterson that she was the driver during the home invasions. (Tr I, 110). Defendant said she had a crack cocaine problem and that the home invasions were the means to obtain money to buy drugs. (Tr I, iii). Defendant admitted to being a participant in the two charged home invasions and to three others. (Tr I, 111). Defendant also admitted to passing two checks that were not hers while posing as Anita Boesman, a victim of an unrelated home invasion. (Tr I, 111). Defendant's written statement was admitted as an exhibit. (Tr I, 1 12)(Appendix A). Defendant's taped statement was played for the jury. (Tr I, 118-119; Tr II, 134-13 5).

3

Defendant confirmed that the bracelet, ring, chips and soda came from a house on Iroquois. (Tr II, 138). Defendant admitted that she allowed Owens to use the car freely. (Tr II, 139). The car was registered to Defendant's husband. (Tr II, 139).

Oakland County Sheriff's Deputy Tony Allen testified that on June 18, 2004, he received a dispatch about a home invasion at 6335 Oakhill in Independence Township. (Tr II, 162). The dispatch included a description of the vehicle involved along with the number of persons involved. (Tr II, 162). Allen saw a vehicle matching the description of the vehicle identified in the dispatch and pulled the vehicle over. (Tr II, 163). Defendant was the driver of the vehicle. (Tr II, 163). Defendant was quite defiant — she refused to get out of the car. (Tr II, 167).

After the prosecution rested, Defendant asked for a directed verdict on the two counts of home invasion. (Tr II, 168). Defense counsel claimed there was insufficient evidence of Defendant's intent. (Tr II, 170). The trial court denied the motion.

Defense counsel asked for an illegal entry jury instruction. (Tr II, 185). The prosecution argued that the defense was not that the home invasions did not occur, instead, that Defendant did not have the requisite intent or did not know the intent of the two co-defendants. (Tr II, 185). The trial court agreed with the prosecution and refused to give the requested instruction. (Tr II, 185).

The jury was instructed that the crime of home invasion was a specific intent crime and the prosecution was required to show that Defendant intended to permanently deprive the owners of their property. (Tr II, 213-214). The jury was also instructed that Defendant was charged under an aider and abettor theory. (Tr II, 217). The jury was instructed that the prosecution had to show that Defendant intended to help another commit the crime and that Defendant's mere presence was insufficient. (Tr II, 217). Defense counsel asked the court to reread the aiding and abetting jury instruction because it may have missed the intent element of the crime. (Tr II, 222-223). The trial court reread the aiding and abetting instruction including the intent portion of the instruction. (Tr II, 224). Defense counsel indicated he was satisfied with the jury instructions read. (Tr II, 225).

Pl.-Appellee's Br. on Appeal, in *People v. Shallal*, No. 259300 (Mich. Ct. App.), at 1-4.

C.   *Standard of Review*

Because petitioner's application was filed after April 24, 1996, her petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

(d) An application for a writ of habeas corpus on behalf of a person in custody

4

pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the

5

Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D. *Concurrent Sentences Doctrine*

Respondent argues that the Court should decline to entertain petitioner's challenge to her home invasion convictions because petitioner is currently serving a 9-20 year sentence imposed in a separate case in which petitioner was convicted of solicitation of murder. The Court should disagree.

Under the "concurrent sentencing doctrine," a "court may decline to hear a substantive challenge to a conviction when the sentence on the challenged conviction is being served concurrently with an equal or longer sentence on a valid conviction." *Dale v. Haeberlin*, 878 F.2d

930, 935 n.3 (6th Cir. 1989); *see also*, *United States v. Hughes*, 964 F.2d 536, 541 (6th Cir. 1992). The doctrine is a discretionary one, *see Hughes*, 964 F.2d at 541, and courts "are admittedly hesitant to apply this doctrine." *Dale*, 878 F.2d at 935 n.3; *see also*, *Winn v. Renico*, 175 Fed. Appx. 728, 732 (6th Cir. 2006).. The doctrine is applicable only "when there is *no possibility* of adverse 'collateral consequences' if the convictions stand." *Winn*, 175 Fed. Appx. at 732 (emphasis added); *see also*, *Dale*, 878 F.2d at 935 n.3; *Wilson v. Straub*, 185 F. Supp. 2d 766, 769 (E.D. Mich. 2002) (Hood, J.). The Court should presume that petitioner's conviction carries adverse collateral consequences, *see Wilson*, 185 F. Supp. 2d at 769-70 (citing *Sibron v. New York*, 392 U.S. 40, 55 (1968)); *see also*, *Spencer v. Kemna*, 523 U.S. 1, 8-9 (1998) (noting that the Court generally presumes that a criminal conviction carries adverse collateral consequences beyond the sentence imposed), and respondent bears a heavy "burden of showing that the risk of collateral consequences is too slight to justify review." *Suarez v. Bennett*, 207 Fed. Appx. 114, 115 (2d Cir. 2006). The concurrent sentence doctrine is not jurisdictional–that is, the existence of concurrent sentences does not render a challenge to one sentence moot and therefore outside the Court's jurisdiction. *See United States v. Williams*, 128 S. Ct. 1830, 1838 n.1 (2008); *Benton v. Maryland*, 395 U.S. 784, 791 (1969).

Respondent argues that the Court should apply this doctrine to petitioner's current application for the writ of habeas corpus because she is currently serving a separate 9-20 year sentence on another conviction, and this sentence is greater than the sentences imposed in this case on the minimum term and equal to the sentences imposed in this case on the maximum term. Thus, according to respondent, there are no collateral consequences flowing from the current convictions being challenged in petitioner's application. The Court should disagree. As noted in *Dale*, there must be "*no* possibility of adverse 'collateral consequences'" before the concurrent sentencing

7

doctrine will be applied. *Dale*, 878 F.2d at n.3 (emphasis added). Here, it cannot be said that there is *no* possibility of adverse consequences. There is a possibility, however slight, that petitioner's other conviction not challenged here will no longer result in her imprisonment. For example, although it seems unlikely, this conviction may be overturned in state postconviction proceedings, or by a federal court through a writ of habeas corpus or a writ of error corum nobis. Likewise, the existence of these multiple convictions may implicate petitioner's suitability for parole.

Prior to adoption of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 26, 1996), such slight possibilities of collateral consequences could be adequately accounted for by dismissing the petition pursuant to the concurrent sentencing doctrine, but making such a dismissal without prejudice to the petitioner refiling his or her application should the unlikely collateral consequences occur. For example, this was the course taken by the court in *Scott v. Louisiana*, 934 F.2d 631, 635 (5th Cir. 1991). However, even if this Court were to take the approach of the *Scott* court, application of the concurrent sentencing doctrine to petitioner's application will have the effect of forever precluding petitioner from challenging this conviction, even if the greater sentence is commuted or otherwise becomes invalid, due to the one year limitations period of the AEDPA. 28 U.S.C. § 2244(d)(1). Accordingly, the Court should decline respondent's invitation to apply the concurrent sentence doctrine.

E.  *Analysis*

Petitioner's habeas claims challenge the adequacy of the trial court's jury instructions in two respects. First, petitioner contends that the trial court erred in not instructing the jury on the elements of illegal entry as a lesser included offense of home invasion. Second, petitioner argues that she was denied a fair trial because the trial court's instruction on aiding and abetting did not adequately

explain the intent necessary for petitioner to be found guilty as an aider and abettor. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

    1.    *Clearly Established Law*

In order for habeas corpus relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous or universally condemned; rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Wood v. Marshall*, 790 F.2d 548, 551-52 (6th Cir. 1986); *cf. United States v. Sheffey*, 57 F.3d 1419, 1429-30 (6th Cir. 1995) (standard of review for jury instructions challenged on direct criminal appeal). As the Supreme Court noted in *Estelle*, the Court should "also bear in mind [the Supreme Court's] previous admonition that we 'have defined the category of infractions that violate "fundamental fairness" very narrowly.'" *Estelle*, 502 U.S. at 72-73 (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)). If an instruction is ambiguous and not necessarily erroneous, it can run afoul of the Constitution only if there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution. *See Estelle*, 502 U.S. at 72 & 73 n.4; *Boyde v. California*, 494 U.S. 370, 380 (1990). In short, instructional errors of state law will rarely form the basis for federal habeas corpus relief. *See Estelle*, 502 U.S. at 71-72.

    2.    *Failure to Give Lesser Offense Instruction*

Petitioner first argues that the jury should have been given an instruction on illegal entry as a lesser included offense of home invasion. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

Although the Eighth Amendment and the Due Process Clause require that a trial court instruct the jury on lesser included offenses in the context of a capital case, *see Beck v. Alabama*, 447 U.S.

9

625, 637-38 (1980) (trial court required to instruct *sua sponte* on lesser included offenses where the failure to do so would result in the jury being given an "all or nothing" choice of convicting on the capital charge or acquitting the defendant), "the Constitution does not requires a lesser-included offense instruction in non-capital cases." *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001). As the Sixth Circuit has noted, even where a lesser offense instruction is requested, the failure of a court to instruct on a lesser included or cognate offense in a non-capital case is generally "not an error of such magnitude to be cognizable in federal habeas corpus review." *Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990) (en banc); *see also*, *Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002). At a minimum, there is no clearly established Supreme Court law which requires the giving of a requested lesser offense instruction in the non-capital context, as is required for habeas relief under § 2254(d)(1). *See Samu v. Elo*, 14 Fed. Appx. 477, 479 (6th Cir. 2001); *Kuroda v. Bell*, No. 2:07-CV-12310, 2007 WL 1657410, at *2 (E.D. Mich. June 7, 2007) (Cohn, J.); *Adams v. Smith*, 280 F. Supp. 2d 704, 717 (E.D. Mich. 2003) (Tarnow, J.). Thus, the Michigan Court of Appeals's resolution of this claim was not contrary to, or an unreasonable application of, clearly established federal law, and petitioner is therefore not entitled to habeas relief on this claim.

3. *Sufficiency of Aiding and Abetting Instruction*

Petitioner also challenges the sufficiency of the instruction on aiding and abetting. Specifically, petitioner argues that the trial court failed to explain to the jury that petitioner could be found guilty as an aider and abettor only if she shared the principal's specific intent to commit a home invasion or offered assistance while knowing of the principal's intent. The Court should conclude that this claim is without merit.

Michigan's standard criminal jury instruction on aiding and abetting reads as follows:

(1) In this case, the defendant is charged with committing _____ or

10

intentionally assisting someone else in committing it.

  (2) Anyone who intentionally assists someone else in committing a crime is as guilty as the person who directly commits it and can be convicted of that crime as an aider and abettor.

  (3) To prove this charge the prosecutor must prove each of the following elements beyond a reasonable doubt:

  (a) First, that the alleged crime was actually committed, either by the defendant or by someone else. {It does not matter whether anyone else has been convicted of the crime.}

  (b) Second, that before or during the crime, the defendant did something to assist in the commission of the crime.

  (c) Third, the defendant must have intended the commission of the crime alleged or must have known that the other person intended its commission at the time of giving the assistance.

MICHIGAN CRIMINAL JURY INSTRUCTION 2D (CJI2D) 8.1. Petitioner contends that the trial court failed to adequately instruct the jury on the intent element reflected in CJI2d 8.1(3)(c). The Court should disagree.

The trial court first instructed the jury regarding the elements of each of the crimes. Specifically, the trial court instructed that both first and second degree home invasion required proof of specific intent. *See* Trial Tr., Vol. II, at 213, 214-15. Apparently reading the pages out of order, the Court then instructed: "Third, that the defendant must have intended the commission of the crimes alleged or must have known that the other person intended its commission at the time of giving the assistance," *id*. at 216, encompassing the third element of aiding and abetting reflected in CJI2d 8.1(c)(3). The trial court then read the beginning portion of CJI2d 8.1, including an instruction that mere presence is not sufficient. *See id*. at 216-18. After the conclusion of the court's instructions, defense counsel objected, arguing that the court had omitted the instruction on the intent element. *See id*. at 222-23. The trial court brought the jury back into the courtroom, and read CJI2d 8.1 in its entirety, including the intent element reflected in CJI2d 8.1(3)(c). *See id*. at 224. Defense counsel pronounced himself satisfied with the instructions as given. *See id*. at 225.

11

A review of the transcript thus makes clear that petitioner's claim fails as a factual matter. The trial judge did initially instruct on the intent element, although he did so out of order. Regardless of whether this fact alone would be sufficient to state a habeas claim, the trial court did reinstruct the jury before it began its deliberations on the proper elements of aiding and abetting, and read the elements in the proper order. The trial court also instructed specifically that mere presence, even with knowledge of the principal's intent, is not sufficient for aiding and abetting liability. Thus, the trial court's instructions adequately conveyed all of the elements reflected in CJI2d 8.1. And the instructions as given adequately informed the jury of all the elements of aiding and abetting liability, including the intent element. *See Polk v. Trombley*, No. 2:06-CV-10568, 2007 WL 2746614, at *4 (E.D. Mich. Sept. 19, 2007) (Zatkoff, J.); *Shepherd v. Howes*, No. 05-CV-71936, 2007 WL 551601, at *7 (E.D. Mich. Feb. 20, 2007) (Cleland, J.); *Pannell v. McKee*, No. 05-71439, 2006 WL 1662805, at *9 (E.D. Mich. June 9, 2006) (Edmunds, J., adopting report of Komives, M.J.). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.   *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.   NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health*

*& Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated:11/10/08

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on November 10, 2008.

s/Eddrey Butts
Case Manager